IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| DENISE E. TERRY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | ) CIVIL ACTION NO. 06-G-1547-NE |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |
| | ) |
| | ) |

**MEMORANDUM OPINION**

The plaintiff, Denise E. Terry, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R. § 404.1520 (a)-(f). The Commissioner must determine in sequence:

    (1)    whether the claimant is currently employed;

    (2)    whether she has a severe impairment;

    (3)    whether her impairment meets or equals one listed by the Secretary;

    (4)    whether the claimant can perform her past work; and

  (5)  whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope, at 477; accord Foot v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

  In the instant case, the ALJ, Randall C. Stout, determined the plaintiff met the first two tests, but concluded she did not suffer from a listed impairment.  The ALJ found the plaintiff able to perform her past relevant work, and accordingly found her not disabled.

### THE STANDARD FOR REJECTING THE TESTIMONY OF A TREATING PHYSICIAN

  As the Sixth Circuit has noted:  "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim."  Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988).  "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary."  McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991).  In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for

giving it no weight ...." McGregor, 786 F.2d at 1053. If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true. McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216. The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence. See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required. The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers withing the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law. Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the

need to expedite disability claims." Id. If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand. As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited. Id. This also holds true for the opinions of treating physicians.

## DISCUSSION

The plaintiff claims disability from December 31, 2002, because of a mixed seizure disorder, degenerative joint disease, headaches and depression. [R. 23]. On June 9, 2000, the plaintiff was seen by her physician, George A. Evans, M.D., after a motor vehicle accident which occurred while the plaintiff was driving. The plaintiff suffered a seizure while stopped at a red light, lost control of her car, and rear-ended the vehicle in front of her. [R. 153]. Dr. Evans noted that the plaintiff's Tegretol (a drug used to control seizures) level "was in the low normal range," and increased her dosage to 500 milligrams daily. [R. 153]. Dr. Evans referred her to Rao Nadella, M.D., a neurologist, for treatment. On June 27, 2000, Dr. Nadella diagnosed a seizure disorder, and desired to increase her Tegretol dosage even further, but the plaintiff resisted because it was "causing her [a] lot of tiredness and sleepiness." [R. 267]. Dr. Nadella gave her the option of switching to Trileptal, which he said has fewer side effects. [R. 267]. At an August 10, 2000, follow-up visit with Dr. Nadella, the plaintiff, describing her seizures, complained "that she is having some vague feeling and is unable to recall what she did

during that time and she feels tired after the event." [R. 265]. Dr. Nadella modified his diagnosis to complex partial seizures, and increased her dosage of anti-seizure medication. [R. 265]. Dr. Nadella continued to see the plaintiff on a regular basis through November, 2004. [R. 249-270; R. 355-361]. On January 13, 2005, Dr. Nadella stated:

> Ms. Terry suffers from complex partial seizures, depression, insomnia and headaches. I believe that these diagnoses cause the patient to be disabled. She is unable to drive. I think that Ms. Terry will be disabled for the rest of her life.

[R. 360]. Because Dr. Nadella is a specialist in the field of neurology, his opinion is entitled to more weight in this area.

The plaintiff testified that while earlier in her life she suffered grand mal seizures, more recently she had been having frequent smaller seizures which affected her ability to speak, and caused her to be nervous, confused and fatigued. [R. 385-386]. She described the side-effects of anticonvulsant medication as excessive sleepiness and difficulty in waking up. [R. 386, 389]. She also testified that she suffers from severe headaches twice a week, which cause her to stay in bed. [R. 393].

In his decision, ALJ Stout found that the plaintiff had the following residual functional capacity:

> she has no more than moderate limitations of activities of daily living, social functioning, or concentration/persistence/pace. She can perform light exertional activity, but cannot work at heights, climbing ladders/ropes/scaffolds, or around dangerous machinery.

[R. 36].  The ALJ determined that the plaintiff was able to perform her past relevant work as a home health aide, a job which requires the plaintiff to drive to the homes of clients to perform her duties.  [R. 36].  The ALJ concluded that the plaintiff could "perform a significant range of light work," but that even if she could not perform the full range of light work, there is a significant number of jobs she could perform.  [R. 36].

In reaching these conclusions, the ALJ explicitly rejected the testimony of the plaintiff's long-term treating physician and specialist, Dr. Nadella.  The Commissioner is correct that the ultimate determination of disability is a legal rather than a medical determination.  However, he is not free to base his decision on such unstated reasons or hunches.  Judge Johnson eloquently stated the proper role of an ALJ in his concurring opinion in Marbury v. Sullivan, as follows:

> An ALJ sitting as a hearing officer abuses his discretion when he substitutes his own uninformed medical evaluations for those of claimant's treating physicians: "Absent a good showing of cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Secretary." Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988). . . . An ALJ may, of course, engage in whatever idle speculations regarding the legitimacy of the claims that come before him in his private or personal capacity; however, as a hearing officer he may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional.

957 F.2d 837, 840-41 (11th Cir. 1992)(emphasis in original).  In his decision, the ALJ concluded that sleep deprivation and subtherapeutic levels of anti-seizure medications were responsible for the plaintiff's seizures, instead of the failure of multiple trials of different medications to control the plaintiff's seizure disorder.  [R. 33].  The ALJ,

therefore, "succumbed to the [forbidden] temptation to play doctor and make [his] own independent medical findings."  Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996).

One important aspect of the Commissioner's duty to develop a fair and complete record is her duty to recontact a claimant's treating physician.  The Commissioner's regulations provide as follows:

> (e) Recontacting medical sources.  When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision.  To obtain the information, we will take the following actions.
>
> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available.  We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.  We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source.  In every instance where medical evidence is obtained over the telephone, the telephone report will be sent to the source for review, signature and return.

20 C.F.R. § 404.1512(e).  Instead of rejecting Dr. Nadella's opinion as only "conclusory[1]," the ALJ should have recontacted Dr. Nadella regarding the plaintiff's

---

[1]  Although the ALJ discounted Dr. Nadella's opinion as merely "conclusory," [R. 33], the opinion of the plaintiff's long-term treating neurologist was based on a five-year longitudinal history of treatment, and should be assumed to be the doctor's own professional assessment based on that history of treatment.

diagnosis, limitations, abilities and prognosis. The ALJ's improper substitution of judgment is legal error, and renders his decision not supported by substantial evidence.

At the ALJ hearing, Julia Russell, a Vocational Expert (VE), testified that if the plaintiff were having seizures at a rate of two to three times per week, with residuals that would impair her ability to concentrate, then the plaintiff could not complete a 40-hour work week on a sustained basis because of excessive absenteeism. [R. 398-408].

If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true. McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216. Because the ALJ improperly ignored the report of Dr. Nadella, as a matter of law it must be accepted by the court as true. Based upon that report and the VE's testimony, the plaintiff is disabled within the meaning of the Social Security Act. This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed. Id. An appropriate order will be entered contemporaneously herewith.

DONE and ORDERED 30 January 2008.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.